21828

The STATE, Respondent, v. Paul F. KOON, Appellant.
(298 S. E. (2d) 769)

*David I. Bruck,* of *S. C. Com'n of Appellant Defense,* Columbia, and *Michael L. Johnson* and *James E. Whittle, Jr.,* Aiken, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Sr. Asst. Atty. Gen. Brian P. Gibbes* and *Asst. Atty. Gen. Preston F. McDaniel,* Columbia, and *Sol. Robert J. Harte,* Aiken, *for respondent.*

Dec. 20, 1982.

HARWELL, Justice.

Appellant was convicted of murder by an Aiken County jury. After finding that appellant committed the murder while in the commission of a kidnapping, the jury recommended the death penalty. Thereafter, the trial judge sentenced the appellant to death. This case consolidates the appellant's direct appeal and mandatory review of the death sentence.

On September 6, 1980, several witnesses saw a man abduct a young woman as she was entering an automobile in an Augusta, Georgia shopping center parking lot. Witnesses stated the man shoved the victim into another automobile and then drove away with her. A license check revealed the abandoned automobile belonged to Valerie White Newsome. On October 11, 1980, appellant was arrested on unrelated charges in Aiken County. Three days later appellant led police officers to Ms. Newsome's body. Appellant was subsequently charged with and convicted of Ms. Newsome's murder.

Appellant alleges several errors occurred during his trial requiring a reversal of his conviction and sentence of death. We affirm his conviction, vacate his sentence of death, and remand for resentencing.

## I. Guilt or Innocence Phase

Appellant first alleges that the trial court erred in denying his pretrial motion for a change of venue due to pretrial publicity. Where, as here, the trial judge bases his ruling on adequate *voir dire* examination of the jurors, his conclusion will not be disturbed absent extraordinary circumstances. *State v. Thompson,* 292 S. E. (2d) 581 (corrected), (S. C. 1982); *State v. Plath,* 277 S. C. 126, 284 S. E. (2d) 221 (1981). The record reflects an extensive *voir dire* bearing no extraordinary circumstances. We addressed the issue of pre-*voir dire* change of venue motions with the "aims of clarity and finality" in *State v. Truesdale,* 296 S. E. (2d) 528 (S. C. 1982). This issue is without merit.

In addition to the pretrial publicity, appellant asserts his motion for a change of venue should have been granted because during one of the trial recesses, a woman approached several of the jurors and stated that the appellant should be given the death penalty to save the taxpayers' money. Appellant alleges this statement reflected the community sentiment and therefore supported his motion for a change of venue. We disagree. The trial judge questioned each of the jurors who heard the statement and ruled that they were not affected by it. He took proper precautions to determine that the court's integrity was not obstructed by the woman's statements. *State v. Stewart*, 295 S. E. (2d) 627 (S. C. 1982). We conclude the trial court properly denied the change of venue motion.

Next, appellant challenges the selection of jurors. Specifically, he argues two prospective jurors were wrongfully disqualified due to their unwillingness to vote for capital punishment. Both prospective jurors stated emphatically during *voir dire* that they did not believe in the death penalty. This particular issue has been decided against appellant previously and is without merit. *State v. Butler*, 290 S. E. (2d) 420 (S. C. 1982). We recently addressed the general issue of lengthy and superfluous *voir dire* in *State v. Smart*, 299 S. E. (2d) 686, S. C., Op. No. 21812, filed November 23, 1982. In *Smart* we reminded trial judges of their authority and duty to restrict questioning of prospective jurors to inquiries into whether a juror is related to either party, has any interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein. In this case, the *voir dire* alone consumed over one-third of the total transcript. We are confident that upon retrial, the trial judge will limit *voir dire* to that contemplated by S. C. Code Ann. § 14-7-1020 (1976) and *State v. Smart*, supra.

Appellant alleges that the police obtained certain inculpatory statements and conduct in violation of his Fifth and Sixth Amendment rights. We disagree. The inculpatory evidence consists of an oral statement, a map drawn by appellant indicating the location of the victim's body, and the appellant's ultimate act of leading police officers to the body. In determining whether an accused has intelligently waived his constitutional rights, we must consider the facts and circum-

stances of each case including the background, experience, and conduct of the accused. *State v. Goolsby,* 275 S. C. 110, 268 S. E. (2d) 31 (1980). We conclude that appellant intelligently and voluntarily waived his rights to counsel and to remain silent.

Aiken County police officers informed appellant of his constitutional rights under *Miranda v. Arizona* contemporaneously with his arrest. Appellant initially signed a waiver of rights form but then requested an attorney. He subsequently conversed exclusively with his attorneys for the following two and a half days. Sergeant Beard from the Richmond County Georgia Sheriff's Department testified that on the third day he asked appellant's attorney for, and was given, permission to talk with appellant. Appellant's attorney testified he did not remember giving the sergeant permission; however, he did not deny it. The sergeant stated he readvised appellant of his rights, and appellant then expressed a willingness to talk without his attorney's presence. After an hour of questioning, appellant stated that he would disclose the location of the body but that he first wanted to converse with his attorney. Consequently, questioning ceased, and the sergeant summoned appellant's attorney. After conferring with his client, the attorney informed the police officers that appellant would reveal the location of the victim's body. Appellant then drew a map indicating the site. Armed with the map, police officers and appellant's attorney attempted, but were unable, to discover the body. They returned to the jail and requested appellant to accompany them. He consented while in his attorney's presence. His attorney, however, declined to go with him and the officers to the site. On the way, officers readvised appellant of his rights. They did not interrogate him. Thereafter, appellant stated that he had not sexually molested or stabbed the victim. With the appellant's direction, the officers then discovered the partially decomposed body in an isolated Aiken County area.

First, appellant alleges his inculpatory statement that he would tell the officers where to locate the body was obtained in violation of his constitutional rights. We disagree. In *State v. Pendergrass,* 270 S. C. 1, 239 S. E. (2d) 750 (1977), we cited *Michigan v. Mosley,* 423 U. S. 96, 102, 96 S. Ct. 321, 325-26, 46 L. Ed. (2d) 313, 320 (1975) for the proposition that

a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interest.

Based upon these particular facts, we believe the appellant knowingly waived his right to counsel and voluntarily spoke with the law enforcement officers. *Edwards v. Arizona*, 451 U. S. 477, 101 S. Ct. 1880, 68 L. Ed. (2d) 378 (1981) cited by appellant is not dispositive of the issue here. In *Edwards* the defendant had asserted his right to counsel, and questioning had ceased. On the following day, before defendant obtained counsel, police questioned him. The Supreme Court held that an accused who has asserted his right to counsel is not subject to further interrogation *until counsel has been made available to him*, unless the accused himself initiates further communication with the police. Here, the appellant had consulted with his attorneys and was aware of his right to have counsel present during interrogation. In fact, before he told the officers where to locate the body, he requested his counsel's presence. Likewise, he knew he had the right to have his counsel present before he made any inculpatory statements.

Appellant also argues that, but for his initial inculpatory statement, he would not have drawn the map or led the officers to the body. He asserts the fruit of the poisonous tree doctrine governs. Because we have just concluded that the tree was not poisonous, neither is the fruit. This exception is without merit.

Appellant volunteered the inculpatory statements ■ made on the way to the scene of the crime. Therefore, they were not the product of an interrogation. *Rhode Island v. Innis*, 446 U. S. 291, 100 S. Ct. 1682, 64 L. Ed. (2d) 297 (1980).

Next, appellant asserts the trial court erred when it ■ instructed the jury on the presumption of malice which may be drawn from the use of a deadly weapon. He alleges that the instruction created an irrebuttable presumption which unconstitutionally shifted the burden of proof. We disagree. The trial court's instructions on malice constituted

three pages in the transcript and concluded with the following:

> I charge you that, even if the facts proven are sufficient to raise a presumption of malice, such presumption is rebuttable presumption; and, even though it be a presumption that it should be considered in conjunction with all of the other evidence you have heard. It is for you, the jury, to determine from all the evidence whether or not malice has been proven, the burden of proof being on the State to prove malice beyond a reasonable doubt.

This charge on implied malice from the use of a deadly weapon measures favorably with the one we suggested in *State v. Mattison*, 276 S. C. 235, 277 S. E. (2d) 598 (1981).

We conclude that the trial court committed no reversible errors in the guilt or innocence phase of appellant's trial.

## II. Sentencing Phase

During the sentencing phase of appellant's trial, the State introduced testimony to show appellant previously had attempted a similar crime. Appellant alleges the trial court erred in admitting the evidence. We disagree. Appellant testified that he had not preconceived the crime; instead, he abducted the victim on the spur of the moment. However, a young woman testified that appellant had approached her one month prior to the murder at the same shopping center and in the same manner as he had the victim. Her testimony indicated appellant's individual characteristics and his predisposition to commit similar crimes. Before a death sentence may be imposed, the attention of the sentencing authority must be directed to the specific circumstances of the crime and the characteristics of the person who committed the crime. *State v. Shaw*, 273 S. C. 194, 255 S. E. (2d) 799, cert. denied, 444 U. S. 957, 100 S. Ct. 437, 62 L. Ed. (2d) 329 (1979); reh. denied, 444 U. S. 1027, 100 S. Ct. 694, 62 L. Ed. (2d) 662 (1980). The trial judge correctly permitted the State to introduce evidence to establish the circumstances of aggravation.

Next, appellant alleges the prosecution violated his Sixth, Eighth and Fourteenth Amendment rights when he cross-examined a defense psychiatrist concerning his pretrial refusal to give the State his report on

appellant. However, the psychiatrist initially denied making an evaluative report. Therefore, the prosecutor properly questioned the psychiatrist for impeachment purposes. *McMillan v. Ridges*, 229 S. C. 76, 91 S. E. (2d) 883 (1956); 98 C. J. S. *Witnesses* § 484 (1957). In addition, the cross-examination of a witness to test his credibility is largely within the discretion of the trial judge, and his decision whether to allow the contradictory testimony will not be disturbed on appeal except for manifest abuse of discretion. *State v. Lynn*, 284 S. E. (2d) 786 (S. C. 1981). *Estelle v. Smith*, 451 U. S. 454, 101 S. Ct. 1866, 68 L. Ed. (2d) 359 (1981), cited by appellant is not controlling. In *Estelle*, the Fifth Amendment privilege was directly involved because the State used the evidence for substantive purposes. Here, the State used the evidence as impeachment.

During the State's closing argument, the solicitor commented on the psychiatrist's refusal to divulge the information gained through the pretrial psychiatric examination.

> I didn't mean to get on him too much; but I couldn't understand why he wouldn't send me a copy of his report. I just don't understand it. What has he got to hide? What do any of us have to hide? Nothing.

We decline to discuss the argument at length here since we have determined that the appellant must be resentenced. Nevertheless, we admonish the solicitor on retrial to stay "within the record and its reasonable inferences. . . ." *State v. Linder*, 276 S. C. 304, 278 S. E. (2d) 335 (1981).

Appellant next alleges that the trial court erred by excluding certain psychiatric evidence concerning his future adaptability to jail. We disagree. The penalty phase of a capital murder case is concerned with the existence or nonexistence of mitigating or aggravating circumstances involved in or arising out of the murder, not the convicted murderer's adaptability to prison life. The jury is concerned with the circumstances of the crime and the characteristics of the individual defendant as they bear logical relevance to the crime. *State v. Shaw*, supra. In *Lockett v. Ohio*, 438 U. S. 586, 98 S. Ct. 2954, 57 L. Ed. (2d) 973 (1978), cited as controlling in *Eddings v. Oklahoma*, ___ U. S. ___, 102 S. Ct. 869, 71 L. Ed. (2d) 1 (1982), the United States Supreme Court retained the

court's traditional authority to exclude irrelevant evidence which did not bear on a defendant's character, prior record, or the circumstances of his offense. We conclude the evidence of appellant's future conformity to prison life was properly excluded as irrelevant. Moreover, because similar evidence was admitted, the psychiatrist's testimony would have been merely cumulative.

Additionally, appellant alleges the trial court erred by disallowing the psychiatrist to opine whether a particular mitigating circumstance was present. Whether statutory mitigating circumstances exist is an ultimate issue of fact for the jury. Therefore, the trial court properly excluded the inquiry. *State v. Moorer*, 241 S. C. 487, 129 S. E. (2d) 330 (1963). Moreover, the psychiatrist was allowed to testify concerning his evaluation of appellant; as a result, the jury had the benefit of his expert opinion on appellant's mental status. The jury could draw its own conclusion about the presence of mitigating circumstances.

Next, appellant argues that the trial court erred by not instructing the jury on the elements of kidnapping, the alleged aggravating circumstance which made this a capital murder case. During the penalty phase of trial, the appellant admitted that he kidnapped and murdered the victim. Where the defendant admits an issue in a case, the issue is undisputed; therefore, the trial court has no duty to charge it. See, *State v. Weaver*, 265 S. C. 130, 217 S. E. (2d) 31 (1975); *Stevens v. State*, 245 Ga. 583, 266 S. E. (2d) 194 (1980).

Appellant submits that the kidnapping statute, as used in defining a statutory aggravating circumstance, is so overly broad that it virtually encompasses all cases of murder. We have recently disposed of this argument in *State v. Copeland and Roberts*, ___ S. E. (2d) ___, S. C., Op. No. 21808, filed November 10, 1982.

Appellant alleges that *Enmund v. Florida*, ___ U. S. ___, 102 S. Ct. 3368, 73 L. Ed. (2d) 1140 (1982) renders the death penalty excessive and disproportionate where the appellant did not intend to commit a homicide. *Enmund* held that the Eighth and Fourteenth Amendments prohibit imposing the death penalty upon one who aids and abets in a felony murder but who does not himself kill, attempt to kill, or intend to kill the victim. Because appellant admitted he killed the victim, *Enmund* is not dispositive here.

Appellant argues that the trial judge impermissibly suggested to the jury that its sentencing recommendation would be merely advisory because he charged that the jury could "recommend" the death penalty. We resolved this issue adversely to appellant in *State v. Linder,* supra.

Finally, appellant alleges that the solicitor injected his personal opinion into the jury's deliberations. We agree. The solicitor made the following statements during his closing argument at the sentencing phase:

> ... I, as Solicitor and chief prosecuting officer in this county, must make the decision whether or not the State of South Carolina must seek the death penalty. ... So, you see, you are not alone in your decision. I have already made that decision. ...
>
> I made that decision some months ago. And if I can do it, you can [do].

This is precisely the same argument that required reversal of the death sentences in *State v. Butler,* 290 S. E. (2d) 420 (S. C. 1982) and *State v. Woomer,* 284 S. E. (2d) 357 (S. C. 1981). Therefore, we vacate the death penalty.

Accordingly, we affirm appellant's conviction of murder, vacate the death penalty, and remand for resentencing.

LEWIS, C.J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.