22778

The STATE, Respondent v. Leroy Joseph DRAYTON, Appellant.

(361 S. E. (2d) 329)

Supreme Court

FINNEY, J., dissented in a separate opinion.

*John H. Blume, III,* of *Bruck & Blume,* and *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia, and *Solicitor Charles M. Condon,* Charleston, *for respondent.*

Heard March 10, 1987.

Decided Sept. 8, 1987.

LITTLEJOHN, Acting Associate Justice:

Appellant (Drayton) was convicted of murder, armed robbery and kidnapping. He was sentenced to death for the murder and to 25 years' imprisonment for armed robbery.[1]

---

[1] No separate sentence was imposed for the kidnapping.

This case consolidates Drayton's direct appeal and our mandatory review of the death sentence pursuant to S. C. Code Ann. § 16-3-25 (1985). We affirm.

This represents Drayton's second appeal. His first trial resulted in convictions on all charges and a sentence of death. This Court found reversible error and remanded for a new trial. *State v. Drayton*, 287 S. C. 226, 337 S. E. (2d) 216 (1985).

## FACTS

In the early morning hours of Saturday, February 11, 1984, Drayton killed Rhonda Darlene Smith by firing a .38-caliber bullet into her head at close range.

Events leading to the murder are discerned from Drayton's confession and from testimony of witnesses who observed Drayton and Miss Smith together prior to the fatal shooting.

At approximately 11:30 p.m., Friday, February 10, Miss Smith drove her fiance's car to work. She then commenced her shift as cashier of a Kayo gas station and convenience store in the North Charleston area. Between 1:00 and 1:30 a.m. on Saturday, she had a telephone conversation with her fiance.

Thereafter, Drayton entered the station with a .357 magnum pistol. He then abducted Miss Smith in her fiance's car. After driving a distance Drayton, riding as a passenger, required her to return to the station. Upon arrival, they observed Gerald Condon, who testified that he was at the station to purchase cigarettes, but had found the station door locked. According to Condon, Miss Smith gave a signal with her hands indicating she would return and then drove back in the direction from which she had come.

Later, Drayton and Miss Smith did return, at which time customers were present. After these customers were served and had departed, Drayton again abducted Miss Smith. They drove to a secluded area along the Cooper River, where an abandoned coal trestle and pier were located.

In his confession Drayton states that the pistol fired accidentally when he lost his balance on the pier, causing his right hand to strike the railing. Miss Smith was killed immediately and fell from the pier into a grassy area imme-

diately adjacent to the river. Drayton left, driving Miss Smith's car, and contacted a friend, Anthony J. Washington (Washington).

At daybreak Drayton and Washington returned to the scene where, according to Drayton's statement, Washington took money from Miss Smith's pockets. Money was also discovered missing from the store.

Miss Smith's body was discovered near the coal trestle between 10:00 and 11:30 a.m. on Saturday by a fisherman.

In his statement Drayton claims that he remained in the Charleston area until apprehended. Washington disputes this, testifying that he and Drayton placed stolen license plates on Miss Smith's car on February 11, and drove to New York City. While there Drayton gave the pistol to his uncle, who also arranged a sale of the car. Testimony of the uncle corroborates that of Washington.

Drayton and Washington returned to Charleston from New York by commercial bus on Tuesday, February 14. Drayton was arrested and charged on Thursday, February 16.

## ISSUES

1. Did the trial court err in excusing two prospective jurors for cause based upon their oppositions to the death penalty?

2. Did the trial court err in qualifying two prospective jurors who had some prior knowledge of the facts of the case?

3. Did the trial court err in its opening remarks to the jury venire?

4. Did the trial court err in ruling admissible a State witness' in-court identification of Drayton?

5. Did the trial court err in ruling admissible Drayton's written statement?

6. Did the trial court err in refusing to charge robbery as a lesser included offense of armed robbery?

7. Did the trial court err in permitting the Solicitor to refer to Drayton's parole violations and in failing to give a limiting instruction as to their use?

8. Did the trial court err in failing to charge certain statutory mitigating circumstances on the ground the evi-

dence may have shown Drayton was intoxicated at the time the crimes were committed?

## I. EXCUSING JURORS BASED UPON OPPOSITION TO DEATH PENALTY

Drayton contends the trial court erred in excusing ■ two jurors for cause. The first stated that he could not vote for the imposition of the death penalty if the victim were unknown to him. The second stated opposition to the death penalty and that "I just don't want to sign my name on any document saying I was part of something to take someone's life."

In *State v. Patterson*, 290 S. C. 523, 351 S. E. (2d) 853 (1986), this Court reviewed the recent decision of *Lockhart v. McCree*, 476 U. S. 162, 106 S. Ct. 1758, 90 L. Ed. (2d) 137 (1986) as to this issue. In *Lockhart* the Supreme Court held the Federal Constitution does not prohibit the removal for cause of prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties at the sentencing phase of trial.

Both the jurors excused for cause in this case clearly fall within the rule in *Lockhart* and were properly excluded.

## II. QUALIFICATION OF PROSPECTIVE JURORS WITH PRIOR KNOWLEDGE OF FACTS OF CASE

Drayton contends the trial court erred in failing to excuse for cause two prospective jurors with prior knowledge of the facts of the case. Drayton exercised peremptory strikes to remove these jurors and thereafter exhausted all his peremptory strikes.

A *voir dire* examination must be reviewed in its en- ■■ tirety to determine whether the trial court erred in its qualification or disqualification of prospective jurors. *State v. Gaskins*, 284 S. C. 105, 326 S. E. (2d) 132, *cert. denied*, 471 U. S. 1120, 105 S. Ct. 2368, 86 L. Ed. (2d) 266 (1985). The decision whether to excuse a juror for cause is committed to the sound discretion of the trial court. *State v. Plath*, 277 S. C. 126, 284 S. E. (2d) 221 (1981).

Here, both the prospective jurors had read newspaper ■ accounts of the case. However, each stated she could put aside any prior knowledge of the case, follow the

law as charged and base her verdict upon the evidence presented at trial.

Even though the jurors had some basic knowledge of the case, the *voir dire* examinations, read in their entirety, reveal they had no prior opinion of Drayton's guilt and could give him a fair trial. We find no abuse of discretion in the trial court's qualification of these jurors.

## III. OPENING REMARKS

Prior to the individual *voir dire* examinations of the jury venire, the trial judge made opening remarks. He explained the jurors' duties as citizens, the presumption of innocence and the burden of proof. The venire was then instructed that the defendant had the right not to testify and that his failure to testify could not be held against him. During this portion of the remarks, the judge made the following statement:

> But, Ladies and Gentlemen, it's not up to you to seek out the reasons why a person doesn't testify. You are to follow the constitutional mandate, and keep that in mind because it is often difficult to control feelings that, "Well, if it was me and I was accused, you couldn't keep me off the witness stand. I'd be testifying." A lot of times people say, "Well, where there's smoke there's fire." You hear these things everyday.
> Now while you are free to exercise those feelings as a citizen, when you come as a juror and are seated in this jury box, you've got a higher duty and a responsibility, and you've got to follow these principles of law that I give to you.

Drayton elected not to testify. He contends the comments constituted a comment on how a jury may or may not view a defendant's decision not to testify, and thus violated his Fifth Amendment rights.

In *Griffin v. California*, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed. (2d) 106, *reh'g denied*, 381 U. S. 957, 85 S. Ct. 1797, 14 L. Ed. (2d) 730 (1965), the Supreme Court held it is impermissible to comment upon a defendant's failure to testify. *See also State v. Pierce*, 289 S. C. 430, 346 S. E. (2d) 707 (1986); *State v. Gunter*, 286 S. C. 556, 335 S. E. (2d) 542 (1985).

The remarks here were imprudent and we caution that such comments to jurors should be avoided in the future. However, we find no reversible error. The statement was not addressed *to the defendant* as to the effect of his failure to testify nor was it a charge as to a defendant's *accomplished* failure to testify. The intent of the remarks was to inform jurors they would have to set aside any personal opinions and follow the law as instructed by the trial court. They are qualitatively different from the potentially coercive statements in *Pierce* and *Gunter*, and we find no prejudice to Drayton.

## IV. IDENTIFICATION

Drayton contends the trial court erred in allowing a witness's in-court identification of him.

The night of Miss Smith's death, she drove her fiance's, Connell Gowder's, car to work. The next morning while en route to the police station, Gowder stopped at a red light. The sound of a horn caught his attention. He turned and saw a black man leaning out of the driver's window of a car three car-lengths back in the next lane. Gowder noticed that the car was small and the same color as his. When the light changed, he moved into the left lane and waited for the car to pass him. As it did so, he confirmed his suspicion that the car was in fact his, and observed the driver for 30 seconds to one minute.

The next day, while talking to police, Gowder observed a sketch lying on the dashboard of a police car. He stated that the person in the sketch had features similiar to those of the driver of the car. The officers informed Gowder the person in the sketch could not have been the driver because the subject had been in jail at the time. The sketch could not be located at trial.

Gowder testified that later the same day the police showed him photographs from a high school annual. He did not identify anyone in the line-up. The police denied that any photographic line-up was conducted.

Thereafter, Gowder saw Drayton several times on television after his arrest. He stated he then recognized Drayton as the driver. Gowder was called and told to come to the preliminary hearing. There, he happened to observe Drayton through a doorway. He again insisted that Drayton was the driver he had observed.

Drayton objected to Gowder's identification of him at trial on the ground the prior identifications were impermissibly suggestive. At an *in camera* hearing, Gowder testified his identification of Drayton was based solely upon his viewing of the driver the morning after the killing. He testified further that his identification was uninfluenced by anything that happened after that morning.

A court must review the totality of the circumstances ▮▮ to determine whether an identification is reliable. *Neil v. Biggers*, 409 U. S. 188, 93 S. Ct. 375, 34 L. Ed. (2d) 401 (1972); *State v. Scipio*, 283 S. C. 124, 322 S. E. (2d) 15 (1984). The factors to be considered in evaluating the likelihood of misidentification include: (1) the opportunity of the witness to view the accused; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U. S. at 199, 93 S. Ct. at 382, 34 L. Ed. (2d) at 411.

Here, Gowder had a good opportunity to view Drayton. He had a high degree of attention because he was surprised to see his car. Gowder described the driver as a black man with a bushy beard in his late 20's or early 30's of approximately his own weight and height. Gowder demonstrated a high level of certainty that Drayton was the driver. As noted, Drayton's first conviction was reversed and the present appeal is from the retrial. Therefore, approximately two years elapsed between the initial sighting of Drayton and the trial identification.

Under the totality of the circumstances, we hold the identification was sufficiently reliable and was properly admitted to trial.

## V. ADMISSIBILITY OF STATEMENT

Drayton was arrested on the morning of February 16, 1984. He was advised of his *Miranda* rights and invoked the right to remain silent. He was taken to the police station for interrogation, but again invoked the right to remain silent.

During the morning, employees of the Public Defender's office attempted to contact Drayton to determine whether he was indigent and desired their services. Drayton was not informed of the employees' request to speak with him.

Drayton was taken to a bond hearing around noon on February 16. No attorney was present. The magistrate testified at trial that she inferred from Drayton's comments that he did not desire representation by the Public Defender, but planned to secure his own attorney. She did not remember whether Drayton signed a waiver of counsel form. No form could be located at trial. Drayton's testimony that he affirmatively requested counsel at the hearing is disputed by the magistrate and a police officer.

After the hearing, Drayton was returned to the police station for interrogation. He signed a waiver of rights form and gave a 28-page written statement implicating himself in the killing.

### A. *Failure to Inform Drayton of Attorney's Request*

Drayton contends the police's failure to inform him of the Public Defender's office's request to speak with him taints any ostensibly valid waiver of counsel made before he signed his statement.

In *Moran v. Burbine*, 475 U. S. 412, 106 S. Ct. 1135, 89 L. Ed. (2d) 410 (1986) the Supreme Court held the refusal of police to inform an accused that an attorney was attempting to reach him did not present a federal constitutional claim. The court reasoned: "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the state's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." 475 U. S. at _____, 106 S. Ct. at 1142, 89 L. Ed. (2d) at 422.

Here, the record demonstrates that Drayton was informed of his rights before making his statement. We hold the waiver of the right to counsel was valid.

### B. *Request for Counsel*

Alternatively, Drayton contends his confession should have been suppressed under the rule enunciated in *Michigan v. Jackson*, 475 U. S. 625, 106 S. Ct. 1404, 89 L. Ed. (2d) 631 (1986). Therein, the Supreme Court held the admission of incriminating statements obtained at an interrogation after an accused requested counsel at an arraignment violated the Sixth Amendment right to counsel, thus invalidating the defendant's *subsequent* waiver.

Drayton's reliance on *Michigan v. Jackson* is misplaced. Drayton testified he requested counsel at the bond hearing. However, as noted above, testimony of State witnesses disputes this claim.

The Supreme Court of Colorado addressed a similar issue in *People v. Benjamin*, ____, Colo. ____, 732 P. (2d) 1167 (1987). There, the court held a defendant's request that the public defender's office determine his eligibility for appointed counsel did not amount to an implied invocation of his right to counsel. The court reasoned that *Edwards v. Arizona*, 451 U. S. 477, 101 S. Ct. 1880, 68 L. Ed. (2d) 378 (1981) does not prohibit all subsequent police questioning. Rather, when a reasonable inference may be drawn from the conduct or statements of the accused that he does not wish to be represented by an attorney prior to discussing the matters under investigation, questioning may be initiated.

Here, Drayton clearly indicated at the bond hearing that he did not desire the services of the Public Defender. His statement that he planned at some future point to secure private counsel was ambiguous, and may not be equated with an invocation of the right to counsel under the circumstances of this case. Drayton voluntarily waived his rights before reinitiation of questioning. We hold the statement was properly admitted into evidence at trial.

## VI. ROBBERY AS LESSER
## INCLUDED OFFENSE

Drayton contends the trial court erred in refusing to charge robbery as a lesser included offense of armed robbery.

Robbery is defined as the felonious or unlawful taking of money, goods or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear. *State v. Hiott*, 276 S. C. 72, 276 S. E. (2d) 163 (1981). Armed robbery occurs when a person commits robbery while armed with a deadly weapon. S. C. Code Ann. § 16-11-330 (1985); *State v. Keith*, 283 S. C. 597, 325 S. E. (2d) 325 (1985).

Drayton's statement admits he had a weapon in his possession when he went to the Kayo station the morning of February 11. However, the statement is clear that at no point did he remove the pistol from his pants and threaten Miss Smith with it or use the weapon to obtain any money. Rather, according to Drayton's version of the facts, Miss Smith voluntarily took money from the cash register and gave it to him.

Under the State's version of the facts, Drayton was guilty of armed robbery. Under Drayton's version, he was innocent of *any* robbery charge.

A trial judge is required to charge the jury on a lesser included offense if there is evidence from which it could be inferred the lesser, rather than the greater, offense was committed. *State v. Mathis*, 287 S. C. 589, 340 S. E. (2d) 538 (1986).

There is no evidence that Drayton was guilty of the lesser included offense of robbery. Accordingly, the trial court did not err in refusing the requested charge.

## VII. EVIDENCE OF PAROLE
## VIOLATIONS

At the penalty phase of trial, the State introduced evidence that Drayton had committed prior crimes while on parole:

Solicitor: "Defendant Leroy Joseph Drayton was convicted of armed robbery on January 10, 1974. While on

parole for this offense, the defendant was convicted of attempted armed robbery on December 10, 1977. On February 11th, 1984, the defendant was on parole for the attempted armed robbery offense."

During his closing argument, the Solicitor repeated this evidence. Drayton specifically requested the trial court not to mention parole during its charge. The jury was charged as follows:

Now the State has also presented to you for your information facts concerning the defendant's previous convictions. You must remember that these previous and earlier convictions are not and may not be used as proof of the statutory aggravating circumstances of kidnapping and robbery while armed with a deadly weapon, which I just mentioned. The previous convictions may only be considered by you in reference to the character of the defendant and for no other purpose.

Drayton contends the Solicitor's reference to the parole violations and the trial court's failure to give a limiting instruction as to their use are reversible errors.

Drayton relies on cases addressing the impropriety of a jury's speculation as to an accused's parole eligibility. See e.g., State v. Norris, 285 S. C. 86, 328 S. E. (2d) 339 (1985); State v. Copeland, 278 S. C. 572, 300 S. E. (2d) 63 (1982).

We find these cases distinguishable. Here, the Solicitor mentioned parole only in the context of Drayton's prior convictions. At no time did he state or imply that Drayton could be put on parole if he were given a life sentence. We find no error.

## VIII. MITIGATING CIRCUMSTANCES

Drayton contends the trial court erred in failing to charge the statutory mitigating circumstances found in S. C. Code Ann. § 16-3-20(C)(b)(2), (6) and (7) (1986). He argues such a charge was required because there was evidence he was intoxicated on the night of the murder.

In State v. Pierce, 289 S. C. 430, 346 S. E. (2d) 707 (1986), this Court found reversible error in the trial judge's failure to charge voluntary intoxication as a mitigating circumstance where the evidence showed the defendant was intoxicated at the time of the crimes.

Drayton's confession states that he drank alcohol on the evening before the murder, and that he drank beer at the Kayo station. However, there is no evidence Drayton was intoxicated at the time the crime was committed. Accordingly, the trial judge did not err in failing to charge the mitigating circumstances in § 16-3-20(C)(b)(2), (6) and (7).

Affirmed.

NESS, C. J., and GREGORY and HARWELL, JJ., concur.

FINNEY, J., dissents in separate opinion.

FINNEY, Justice, dissenting:

I respectfully dissent. I shall address those errors which I consider most egregious; not in the order of significance, but in the order of their occurrence in the majority's opnion.

## I. OPENING REMARKS

The majority candidly admits that the trial court's remarks were imprudent and cautioned that such comments should be avoided in the future. It is my view that these remarks violate constitutionally protected rights and constitute error. A trial court may generally instruct jurors as to their obligation to set aside personal opinions, bias, and idiosyncrasies in the performance of their duty as triers of the fact. However, it is impermissible for the trial judge to use an illustration which improperly directs attention to a specifically protected constitutional right, and is particularly inexplicable in view of two prior rulings by this Court prohibiting similar remarks. *State v. Pierce*, 289 S. C. 430, 346 S. E. (2d) 707 (1986); *State v. Gunter*, 286 S. C. 556, 335 S. E. (2d) 542 (1985).

## II. ADMISSIBILITY OF APPELLANT'S STATEMENT

The majority's recital of the facts is, in my opinion, obscure. The appellant had already applied for the public defender's services for a prior unrelated charge and was on a public defender "temporary" client file at the time of his arrest when they were trying to communicate with him on February 16, 1984. Despite repeated attempts by the Public Defender's Office to contact appellant, the police did not

permit them to interview appellant until after the bond hearing and after he had given a 28 page statement. A police official testified that, upon the advice of the Solicitor's Office, a conscious decision was made to deny appellant access to the public defender until after a statement was obtained.

Detective Harris gave the following testimony concerning appellant's waiver of the right to counsel:

Q. Did he say, "I do not want a lawyer," period?

A. He didn't say one way or the other, no, sir.

Q. All right. So in fact, insofar as any waivers, he may have said he didn't want a public defender, but he didn't say, "I don't want a lawyer"?

A. And also he didn't say he wanted one either.

The evidence is in conflict as to whether or not the appellant requested counsel at the bond hearing. It is clear, however, that prior to the bond hearing and before obtaining his statement, the police prevented the public defender from interviewing the appellant. It is, likewise, obvious that under the circumstances, the state did not establish a waiver of the right to counsel. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Johnson v. Zerbst*, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). The state has the burden of establishing the validity of a waiver, and all doubt must be resolved in favor of protecting the constitutional claim. *Brewer v. Williams*, 430 U. S. 387, 97 S. Ct. 1232, 51 L. Ed. (2d) 424 (1977). Because no waiver is established, it must be presumed that appellant requested counsel at the hearing. Therefore, under the rule of *Michigan v. Jackson*, 475 U. S. 625, 106 S. Ct. 1404, 89 L. Ed. (2d) 631 (1986), the subsequent waiver appellant signed before he gave his statement is invalid.

Alternatively, appellant contends that the police's and solicitor's willful refusal to permit the Public Defender's Office to see him taints any ostensibly valid waiver of counsel.

In *Moran v. Burbine*, 475 U. S. 412, 106 S. Ct. 1135, 89 L. Ed. (2d) 410 (1986), the Supreme Court held the refusal of police to inform an accused that a public defender was attempting to reach him did not present a federal constitutional claim. Appellant argues, however, that *Moran* merely

*permits* such conduct, and that this Court should prohibit it as a matter of state law.

Other state courts presented with this type of police or prosecutorial conduct have found it to be impermissible. *See, e.g., People v. Houston,* 42 Cal. (3d) 595, 724 P. (2d) 1166, 230 Cal. Rptr. 141 (1986); *People v. Holland,* 174 Ill. App. (2d) 323, 100 Ill. Dec. 868, 497 N. E. (2d) 1230 (1986); *Elfadl v. Maryland,* 61 Md. App. 132, 485 A. (2d) 275 (1985); *cert. denied,* 303 Md. 42, 491 A. (2d) 1197 (1985); *Lewis v. State,* 695 P. (2d) 528 (Ok. 1984); *Commonwealth v. Sherman,* 389 Mass. 287, 450 N. E. (2d) 566 (1983); *Weber v. State,* 457 A. (2d) 674 (Del. 1983); *People v. Smith,* 93 Ill. (2d) 179, 66 Ill. Dec. 412, 442 N. E. (2d) 1325 (1982); *State v. Matthews,* 408 So. (2d) 1274 (La. 1982); *State v. Haynes,* 288 Or. 59, 602 P. (2d) 272 (1979); *cert. denied,* 446 U. S. 945, 100 S. Ct. 2175, 64 L. Ed. (2d) 802 (1980); *State v. Jones,* 19 Wash. App. 850, 578 P. (2d) 71 (1978); *Commonwealth v. Hilliard,* 471 Pa. 318, 370 A. (2d) 322 (1977); *Blanks v. State,* 254 Ga. 420, 330 S. E. (2d) 575 (1985); *State v. Beck,* 687 S. W. (2d) 155, (Mo. 1985) (en banc); *Haliburton v. Florida,* 476 So. (2d) 192 (1985). It is my view that in order to preserve the efficacy of our system, South Carolina should adopt a rule prohibiting such conduct.

## III. ROBBERY AS A LESSER INCLUDED OFFENSE

The majority concludes that the trial court did not err in refusing to charge the jury on the lesser included offense of robbery. A trial judge is required to charge the jury on a lesser included offense if there is evidence that an accused committed the lesser, rather than the greater offense. *State v. Mathis,* 287 S. C. 589, 340 S. E. (2d) 538 (1986). Robbery is a lesser included offense of armed robbery. *State v. Scipio,* 283 S. C. 124, 322 S. E. (2d) 15 (1984). In this case, the trial judge charged the jury on grand larceny and armed robbery. *Compare,* S. C. Code Ann. § 16-13-20 (1976) *with,* S. C. Code Ann. § 16-11-330 (1976). It is irreconcilable that the more removed offense of grand larceny was charged in this instance as a lesser included offense of armed robbery, while robbery was not. Certainly, pristine reasoning leads to the inescapable conclusion that error was committed.

## IV. MITIGATING CIRCUMSTANCES

Appellant contends there was sufficient evidence to require a charge on statutory mitigating circumstances. The majority ignores its recent precedent and holds that there is no evidence of voluntary intoxication to warrant a statutory mitigating circumstance charge. The Court disregards the concept of stare decisis and denies appellant the constitutional right to a fair trial. Recently in *State v. Pierce, supra,* this Court held that S. C. Code Ann. § 16-3-20(C) requires a trial court to instruct a jury regarding statutory mitigating circumstances which may be supported by the evidence.

Evidence of voluntary intoxication is a proper matter for a jury's consideration in mitigation of punishment. *State v. Pierce, supra; State v. Woomer,* 278 S. C. 468, 299 S. E. (2d) 317 (1982), *cert. denied,* 463 U. S. 1229, 103 S. Ct. 3572, 77 L. Ed. (2d) 1413 (1983). When an accused offers proof of a mitigating circumstance, the trial court must instruct the jury to consider the statutory mitigating circumstances which may be supported by the evidence. *See,* S. C. Code Ann. § 16-3-20(C)(b)(2), (6) and (7) (Law Co-Op. 1986). Once such evidence is proffered, the trial court is not to be concerned with the *weight* of the evidence, but rather with the *existence* of such evidence. *State v. Butler,* 277 S. C. 452, 290 S. E. (2d) 1 (1982).

Appellant admitted that he consumed liquor and beer at a birthday party he attended from eight-thirty until midnight on February 10, 1984, and that while he was at the Kayo Station, he drank several 16 ounce beers. Despite appellant's claim, the majority concludes there was no evidence that he was intoxicated at the time of the murder. This conclusion circumvents the statute's plain meaning and ignores legal precedent by fashioning a restrictive interpretation of Section 16-3-20(C). In my view, the evidence concerning the quantity and the period of time during which the appellant consumed alcoholic beverages is more than sufficient to require the submission of this issue to the triers of fact. Whether appellant was intoxicated at the time of the murder, as a matter of law, is not for the trial court's determination but the jury's. *State v. Pierce, supra.*

A fair reading of the majority opinion would either place the burden of proving voluntary intoxication upon an ac-

cused or create some "bright line" test of determining "credible" quantitative evidence of voluntary intoxication before submitting a statutory mitigating circumstance charge to a jury. Such a burden or test, in my opinion, is contrary to Section 16-3-20(C), *Pierce,* and the due process guarantees under the United States and South Carolina Constitutions. A charge of a statutory mitigating circumstance to a jury only requires an accused to offer evidence supporting such a charge and no more.

Accordingly, I would reverse and remand this case for a new trial.