23281

The STATE, Respondent v. Joseph Ernest ATKINS, Appellant.
(399 S.E. (2d) 760)

Supreme Court

*John H. Blume* and *Franklin W. Draper*, both of *S.C. Death Penalty Resource Center*, Columbia, *Michael P. O'Connell* and *Kathryn K. Andrews*, both of *Charleston County Public Defender's Office*, Charleston, and *S.C. Office of Appellate Defense*, Columbia, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* Columbia, and *Sol. Charles M. Condon,* Charleston, *for respondent.*

Heard Sept. 18, 1989.

Decided Oct. 8, 1990.

CHANDLER, Justice:

Appellant, Joseph Ernest Atkins (Atkins) was convicted of murder and sentenced to death. This Court affirmed Atkins' convictions but reversed the penalty and remanded for resen-

tencing. *State v. Atkins*, 293 S.C. 294, 360 S.E. (2d) 302 (1987). Atkins was again sentenced to death; we consolidate his direct appeal with the mandatory review provision of S.C. Code Ann. § 16-3-25 (1985).

We affirm.

## FACTS

On October 27, 1985, Atkins, armed with a machete and shotgun, killed his 75 year old father, Benjamin Atkins, and his 13 year old next-door neighbor, Karen Patterson. The facts are set forth in *State v. Atkins, supra.*

## ISSUES

Did the Court err:

1. In refusing to permit Atkins to attack the constitutionality of his 1970 murder conviction?
2. In instructing the jury regarding Atkins' prior murder conviction?
3. In instructing the jury regarding parole eligibility?
4. In allowing testimony which implied Atkins was racially prejudiced?
5. In requiring the jury to continue deliberations after 3-1/2 hours?
6. In allowing the Solicitor to question experts regarding whether the evidence established statutory mitigating circumstances?
7. In refusing to strike the death penalty due to alleged prosecutorial misconduct in obtaining confidential health records?
8. In instructing the jury regarding its consideration of mitigating evidence?
9. In allowing the Solicitor's closing argument to stand?
10. In qualifying jurors who had knowledge of Atkins' prior death sentence?
11. In qualifying jurors who were predisposed to the death penalty?

## DISCUSSION

## I. CONSTITUTIONALITY OF 1970 MURDER CONVICTION

The State's sole aggravating circumstance was Atkins' 1970 murder conviction, which Atkins contends was invalid due to ineffective assistance of counsel. His request to attack its validity was properly denied by the resentencing Court.

Atkins relies upon the United States Supreme Court decision in *Johnson v. Mississippi*, 486 U.S. 578, 108 S. Ct. 1981, 100 L. Ed. (2d) 575 (1988). However, the facts here are clearly distinguishable from those in *Johnson*.

In *Johnson*, the aggravating circumstance relied upon by the State was the defendant's prior felony conviction. Subsequent to his death sentence, that conviction was invalidated. Understandably, the U.S. Supreme Court held impermissible the State's reliance upon the invalid conviction as an aggravating circumstance warranting the death penalty.

Here, Atkins' 1970 murder conviction has not been reversed or set aside.[1] His resentencing trial was not the proper forum for collateral attack upon that conviction. *See, Dewitt v. South Carolina Department of Highways*, 274 S.C. 184, 262 S.E. (2d) 28 (1980).

## II. JURY INSTRUCTION REGARDING 1970 MURDER CONVICTION

Atkins next contends that the trial Court failed to fully instruct the jury on the State's burden of establishing the existence of the statutory aggravating circumstance. We disagree.

Although Atkins stipulated to his 1970 murder conviction, he was permitted, without restriction, to offer in mitigation, evidence and details concerning the conviction. Moreover, the trial Judge instructed the jury that, notwithstanding the stipulation, "It is for your determination as to whether or not the 1970 murder conviction would be used as an aggravating cir-

---

[1] Atkins' 1986 application for Post-Conviction Relief was dismissed on the ground of laches and this Court denied his Petition for Certiorari. We express no opinion as to any relief Atkins may obtain in a Federal Habeas Corpus proceeding. However, the fact that Atkins may be allowed to collaterally attack the prior conviction in another forum does not entitle him to relief unless and until the conviction is invalidated. *See, e.g., Eutzy v. State*, 541 So. (2d) 1143 (Fla. 1989); *Bundy v. State*, 538 So. (2d) 445 (Fla. 1989); *Moon v. State*, 258 Ga. 748, 375 S.E. (2d) 442 (Ga. 1988).

cumstance in this case," and also charged that it must "make a unanimous finding that the State has proven beyond every reasonable doubt that the murder was committed by a person with a prior record of conviction for murder."

We hold the charge adequately apprised the jury of both the State's burden to establish the aggravating circumstance and the jury's duty to consider, in mitigation, Atkins' evidence from the 1970 conviction.

## III. PAROLE ELIGIBILITY

### A. *Twenty-Year Charge*

The trial Court granted Atkins' request to charge the jury that, if sentenced to life imprisonment, he would not be eligible for parole for twenty years. He now contends the charge violated *State v. Atkins*, 293 S.C. 294, 360 S.E. (2d) 302 (1987). We disagree.

In *Atkins*, we held that in death penalty cases controlled by the Omnibus Crime Control Act of 1986, *if a defendant requests*, he is entitled to a jury charge regarding parole eligibility. 293 S.C. at 300, 360 S.E. (2d) at 306.

Although this case is not controlled by the Omnibus Act, Atkins specifically requested the parole charge; the Court committed no error in granting his request.

### B. *Consecutive Sentences*

During deliberations, the jury inquired whether it could recommend consecutive life sentences. The trial judge, concerned that the query was motivated by parole considerations, charged the jury it could not do so, but that Atkins would be eligible for parole in 20 years even if sentenced consecutively. Atkins contends this was an erroneous statement of the law. We disagree.

Although the precise issue has not been before this Court, in *Mims v. State*, 273 S.C. 740, 259 S.E. (2d) 602 (1979), we held that, for purposes of parole eligibility, consecutive sentences should be treated as one general sentence by aggregating the periods imposed in each sentence.

Multiple life sentences cannot be aggregated in the imposition of prison time. Accordingly, they are to be considered as one general sentence, the parole eligibility for which is 20 years.

## IV. RACIAL PREJUDICE

Atkins is white, Karen Patterson, the 13-year old victim, black. Three witnesses for the State testified regarding prior difficulties between Atkins and the Pattersons, one of which involved his flying the Confederate flag on Independence Day. Atkins contends this testimony improperly implied he was racially prejudiced. We disagree.

In a capital sentencing trial, the jury's function is to determine the appropriate punishment based upon the *circumstances of the crime* and the characteristics of the defendant. *State v. Plath,* 281 S.C. 1, 313 S.E. (2d) 619 (1984).

Here, Atkins' prior disputes with the Pattersons were relevant to motive and, accordingly, the testimony was properly admitted.

## V. "HUNG" JURY

Atkins next contends the trial court erred in requiring the jury to continue deliberating when it indicated, after 3-1/2 hours, that it was hung. We disagree.

The length of time a jury deliberates rests in the sound discretion of the trial judge. *State v. Bennett,* 259 S.C. 50, 190 S.E. (2d) 497 (972).

After a 4-1/2 day trial, we find no abuse of discretion in requiring the jury to continue deliberations.

## VI. EXPERT TESTIMONY

Atkins contends that two experts improperly testified as to the existence of statutory mitigating circumstances. We disagree.

In *State v. Koon,* 278 S.C. 528, 298 S.E. (2d) 769 (1982), we held that the existence of statutory mitigating circumstances is a question of fact for the jury. In *Koon,* an expert was specifically questioned regarding whether the statutory mitigating circumstances were present.

Here, the Solicitor asked both experts whether they had an opinion as to Atkins' state of mind on the day of the crimes, and whether he lacked substantial capacity to conform his conduct to the requirements of the law on that day.[2] Unlike

---

[2] Substantial impairment of a defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law

*Koon,* the questions did not go to the *existence* of statutory mitigating circumstances but, rather, to the experts' knowledge of Atkins' state of mind on the day of the crimes.

As Atkins' state of mind was relevant, admission of the testimony was proper.

## VIII. PROSECUTORIAL MISCONDUCT

Atkins contends the trial court erred in refusing to strike the death penalty due to prosecutorial misconduct. We disagree.

The Solicitor allegedly obtained a medical report in violation of the attorney-client privilege. The trial court, however, precluded the State's use of this report, as well as any testimony of the examining physician. Accordingly, Atkins suffered no prejudice and the court committed no error. *See State v. Greene,* 255 S.C. 548, 180 S.E. (2d) 179 (1971).

## VIII. JURY INSTRUCTION

Atkins next contends that the Court's instructions may have misled the jury. Specifically, he alleges the jury may have believed that, before considering evidence in mitigation, it had to find, unanimously, the *existence* of a mitigating circumstance.

The judge repeatedly stressed that the jury could recommend a life sentence "for any reason or no reason," and that it need not find a mitigating circumstance in order to impose life imprisonment. His charge in no way implies that the jury must unanimously find the existence of a mitigating circumstance as a condition precedent to consideration of that evidence.

The charge, as a whole, is not misleading and Atkins' contention is without merit. *See, State v. Patterson,* 299 S.C. 280, 384 S.E. (2d) 699 (1989).

## IX. CLOSING ARGUMENT

The Solicitor, in closing argument, commented that this case warranted the death penalty, and referred to Atkins' parole eligibility in 20 years if sentenced to life. Additionally, he

---

is a statutory mitigating circumstance. S.C. Code Ann. § 16-3-20(C)(b)(6) (Supp. 1989).

remarked that Atkins' evidence of post-traumatic stress syndrome should not mitigate these murders. Atkins contends these comments were improper and constitute reversible error. We disagree.

The trial judge is vested with broad discretion in determining the propriety of the Solicitor's closing argument. *State v. Durden*, 264 S.C. 86, 212 S.E. (2d) 587 (1975). We stated in *State v. Linder*, 276 S.C. 304, 278 S.E. (2d) 335 (1981):

> Once the trial judge has allowed the argument to stand, as here, the defendant must bear the burden of demonstrating that the argument in effect denied him a fair determination of his guilt or innocence. On appeal, this Court will review the alleged impropriety of argument in the context of the entire record.

276 S.C. at 312, 278 S.E. (2d) at 339.

Viewing the entire record, the argument did not deprive Atkins of a fair trial.

## X. PRIOR DEATH SENTENCE

Atkins contends that two jurors who admitted reading a newspaper article revealing his prior death sentence should have been excused. We disagree.

"A *voir dire* examination must be reviewed in its entirety to determine whether the judge erred in qualifying jurors." *State v. Drayton*, 293 S.C. 417, 361 S.E. (2d) 329 (1987).

In *Drayton, supra,* we approved the qualification of two prospective jurors who had read newspaper accounts of the case. Each stated she could put aside the prior knowledge, follow the law as charged, and base her verdict upon the evidence presented at trial. 293 S.C. at 422-23, 361 S.E. (2d) 329.

Here, both jurors, having stated that they would be guided by the law, the evidence, and no other consideration, were qualified.

## XI. JUROR PREDISPOSITION TO DEATH PENALTY

Lastly, Atkins challenges the Court's qualification of four jurors who, he contends, were predisposed to impose the death penalty.

"The determination of whether a juror is qualified to serve on a death penalty case is within the sole discretion of the trial judge and is not reviewable on appeal unless wholly unsupported by the evidence." *State v. Plemmons*, 286 S.C. 78, 332 S.E. (2d) 765 (1985), *vacated on other grounds* 476 U.S. 1102, 106 S. Ct. 1943, 90 L. Ed. (2d) 353 (1986); *State v. Spann*, 279 S.C. 399, 308 S.E. (2d) 518 (1983).

Here, the *voir dire* of the questioned jurors reveals that all could, depending upon the evidence presented, recommend a life sentence. They were properly qualified.

## PROPORTIONALITY REVIEW

We have conducted the sentence review required by S.C. Code Ann. § 16-3-25 (1985) and conclude that the sentence is not arbitrary, excessive, or disproportionate, and that the evidence supports the jury's finding of the statutory aggravating circumstance. *State v. Patterson*, ___ S.C. ___ , 396 S.E. (2d) 366 (1990); *State v. Green*, ___ S.C.___ , 392 S.E. (2d) 157 (1990).

Affirmed.

GREGORY, C.J., and HARWELL and TOAL, JJ., concur.

FINNEY, J., dissents in separate opinion.

FINNEY, Justice, dissenting:

I respectfully dissent. In my view, the trial court erred in its instructions to the jury regarding parole eligibility and in charging the jury that their decision must be unanimous after being informed by the jury that it seemed to be "hung."[1]

## I. PAROLE ELIGIBILITY

During penalty phase deliberations, the jury submitted the following question to the trial judge.

> Since this jury is dealing with two separate cases, could it recommend two life sentences that would be served consecutively?

In response and over defense counsel's objection, the trial judge instructed the jury as follows:

---

[1] The vote was ten to two.

[T]he answer is no period, absolutely. As to each case, you have two verdicts and two verdicts only. One is the imposition of death, and the second is life in each case. You have no authority to recommend to me consecutive sentences. I will sentence separately as to each case, depending on your verdict.

The solicitor objected, stating: "[I]mplicit in that question is their [the jury's] desire to give this defendant forty years in prison." The solicitor requested a specific instruction that "the parole eligibility is twenty years, regardless of the two murders." Over defense counsel's objection, the trial judge subsequently charged the jury as follows:

... I don't want you to be under any misapprehension as to what the law is. And so I give you the following instruction. You will recall on yesterday that I told you that in the event of life imprisonment, this defendant would not be eligible for parole for a period of twenty years. Now, that same proposition applies if he's convicted once or twice or several. I would not want you to think that— based on the question you handed me about consecutive sentences, I would not wish you to think that he would not be eligible for forty years because that's simply not the law. I don't know whether that was your concern or not. But my concern is simply that since it was requested by one of the parties, regarding parole eligibility, that you have the benefit of it.

The trial judge went on to say that although the appellant would be eligible for parole, he would not necessarily be paroled, and that the jury should not speculate about parole. However, the judge concluded by saying, "I think it's only fair to tell you that two convictions doesn't extend that to forty ... you're talking about eligibility of twenty years."

In my view, the trial judge erred in his charge that the appellant would be eligible for parole in twenty years, even if sentenced to two consecutive life sentences.[2]

---

[2] The appellant had previously been convicted of two counts of murder and received the death penalty on each count. *State v. Joseph Ernest Atkins,* 293 S.C. 294, 360 S.E. (2d) 302 (1987).

The majority correctly recognizes that this question is one of first impression in this jurisdiction. However, I am of the opinion that its reliance on *Mims v. State*, 273 S.C. 740, 259 S.E. (2d) 602 (1979), and the resulting holding are misplaced. In *Mims*, this Court was called upon to interpret two indictments upon which each defendant was separately sentenced. This Court held that where the defendants were sentenced on one indictment to a term of six years and on the other to five years "consecutive, suspended," the sentences were to be considered as one of eleven years for purpose of parole eligibility. Thus, the Court required that determination of statutory parole eligibility be based upon the aggregate sentence. Rather than supporting the majority's view, *Mims* adds credence to appellant's contention that the trial court erred in instructing the jury that he would become eligible for parole after twenty years on two consecutive life sentences.[3]

Additionally, a cursory review of provisions for incarceration reveals the legislature's cognizance that actual prison time served under a life sentence may not extend to the end of natural life. Therefore, the legislature intended to provide for separate, consecutive life sentences under a scheme where prison release would be deferred by basing parole eligibility upon the aggregate of the required minimum incarceration period for each sentence, consecutively served.

Sentences which are consecutive are intended to run one after the other, as would statutory periods of time required to qualify for parole eligibility. Under the majority's holding, the consecutive provision for multiple life sentences would become a nullity. Such a ruling is contrary to prior practice and extinguishes the distinction between multiple life sentences, consecutively imposed, and a single or concurrent life sentences for determining incarceration time and parole eligibility.

## II. "HUNG" JURY

During its deliberations, the jury communicated to the trial court that it seemed to be hung and inquired whether to con-

---

[3] I am fully aware of the fact that under our sentencing scheme, the jury has no involvement in determining whether a sentence will be consecutive or concurrent; that determination is for the trial court.

tinue deliberations. In the ensuing colloquy, the trial judge told the jury that "three and a half hours would not be sufficient for you to have deliberated fully," and subsequently stated: ". . .[Y]our decision must be a unanimous decision of all twelve of you . . ."

In capital cases, the General Assembly has set forth a clear directive when a jury is unable to render a decision as to a sentence. S.C. Code Ann. § 16-3-20 (1985 & Supp. 1989) states, in relevant part:

> In the event that all members of the jury after a reasonable deliberation cannot agree on a recommendation as to whether or not the death sentence should be imposed on a defendant found guilty of murder, the trial judge shall dismiss such jury and shall sentence the defendant to life imprisonment . . .

I would find that the trial judge's incorrect statement of the law, under these circumstances, tended to coerce the jury into reaching a unanimous verdict. Due to the unique nature of the death penalty, practices allowed in other noncapital criminal cases may be constitutionally impermissible if utilized in a capital case. *See Strickland v. Washington*, 466 U.S. 668, 705, 104 S. Ct. 2052, 2073, 80 L. Ed. (2d) 674 (1984).

For the foregoing reasons, I would reverse and remand this case for a new sentencing phase trial.