[No. 5253–1.   Division One.   April 24, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. MELVIN EARL JONES, *Appellant.*

*Steinberg & Steinberg* and *Jack Steinberg,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Roy N. Howson, Deputy,* for respondent.

JAMES, J.—At jury trial, Melvin Earl Jones was convicted of first–degree murder for the death of a young Seattle woman.

Jones was arrested and charged with the murder of two young women who had been found dead in their apartments during the previous month. The victims were in their early twenties and each had been acquainted with Jones. In both cases, the cause of death was determined to be strangulation, and there was evidence of sexual assault. Jones was acquitted on one charge and appeals from his conviction on the other.

We find his principal assignment of error to have merit and, accordingly, we reverse and remand for a new trial.

Jones argues that a statement made by him to police officers should have been excluded as the product of improper police questioning. We agree.

At the time of his arrest, Jones signed a written waiver of his constitutional rights and indicated he did not wish to see an attorney. Jones was kept in custody overnight and the following morning, he voluntarily agreed to submit to a polygraph examination. However, during preliminary questioning, a lawyer contacted the police by telephone. He told them that Jones' mother had retained him as counsel for Jones and he expressly requested that Jones not be interrogated in his absence.

The police informed the lawyer that the test had begun and would not be terminated. It is uncontroverted that Jones was taken to the polygraph room at 8:55 a.m. and the attorney called at 9:10 a.m. Jones was *not* told that counsel

had been retained and had requested that he not be interrogated. According to the police report, the polygraph test was completed at 10:50 a.m.

Jones was informed that he "failed" the test and that the police were convinced he had lied to them in denying involvement in the murders. While escorting Jones back to jail, a police officer asked him if he was sure there wasn't something he wanted to tell the police. Jones replied, "No, but I think I will be convicted."

Jones claims it was error to allow admission of this statement at trial. We agree.

■ When custodial interrogation is conducted in planned absence of counsel without notifying the defendant of counsel's availability and desire to be present during questioning, a defendant has been denied effective assistance of counsel.

> When counsel has been retained to represent a prisoner, the governmental authorities cannot deny the lawyer reasonable access to his client, nor may they ignore [counsel's] request that he be allowed to confer with his client prior to, if not during, the interrogation. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

*State v. Jackson,* 303 So. 2d 734, 737 (La. 1974). *Accord, Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977); *Commonwealth v. Mahnke,* ___ Mass. App. Ct. ___, 335 N.E.2d 660 (1975).

■ There is no question that Jones' statement was the product of custodial interrogation and not "volunteered."

> As *Miranda* clearly indicates, "interrogation" encompasses much more than mere question–answer sessions; often the more successful techniques include psychological tactics and patient maneuverings designed to undermine the suspect's will to resist. *See Miranda v. Arizona,* [384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966)] at 448–56. Any custodial statement is suspect and the burden is upon the State to demonstrate, if it can, that such a statement was "volunteered" in the *Miranda* sense, *i.e.,* that it was spontaneous and

not prompted by questioning or other action calculated to elicit response.

*State v. Boggs,* 16 Wn. App. 682, 685–86, 559 P.2d 11 (1977).

Jones' statement was made in response to the police officer's coaxing soon after Jones had been told he "failed" the polygraph test. As in *Brewer v. Williams,* 430 U.S. 387, 399, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977), "[t]here can be no serious doubt, either, that [the police officer] deliberately and designedly set out to elicit information from [Jones] just as surely as—and perhaps more effectively than—if he had formally interrogated him." The officer's inquiry was "tantamount" to formal custodial interrogation and Jones was entitled to assistance of counsel at the time he made his arguably incriminating statement. *Brewer v. Williams, supra* at 400.

Custodial interrogation imposes a heavy burden on the State to show that a defendant's waiver of his right to counsel was "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938). *Accord, Brewer v. Williams, supra.* Under the concept of *Miranda,* the waiver of a right must not only be voluntary but also knowingly and intelligently made. The State has not met its burden in this case.

■ When counsel expressly requests that his client not be questioned until counsel has conferred with him and police deliberately withhold this information, a defendant's waiver has not been knowingly and intelligently made.

This does not mean that police may not communicate with a defendant after counsel has been retained or appointed. *State v. Vidal,* 82 Wn.2d 74, 508 P.2d 158 (1973). A defendant may choose to ignore the advice of counsel and voluntarily continue communicating with law enforcement officers. *State v. Young,* 65 Wn.2d 938, 400 P.2d 374 (1965). A defendant may, likewise, choose to disavow his counsel's demand that counsel be present during interrogation. *Brewer v. Williams, supra.*

We hold, however, that when counsel is retained or appointed and expressly objects to custodial interrogation of a defendant, these facts must be communicated to a defendant before his waiver will be held to have been knowingly and intelligently made.

In view of our determination that the case must be remanded for a new trial, we will dispose of other claimed errors relating to matters which might reoccur.

■ Jones argues that 40 letters found in the victim's apartment which evidence her acquaintance with criminals should have been admitted to rebut the State's evidence of the victim's good character. The State's evidence cited by Jones was testimony by her mother that she was an "immaculate" housekeeper. The significance of the testimony was that a greasy palm print on the wall of the victim's apartment was identified by the police as belonging to Jones. Jones testified that he had been in the victim's apartment only one time—3 weeks before the homicide. We find no error in excluding the evidence. The character of the victim was not at issue. *State v. Wells,* 17 Wn. App. 146, 561 P.2d 697 (1977).

■ Jones also appeals the denial of his motion to strike expert testimony regarding a comparison of fiber samples taken from the murder scene and from Jones' clothing. The witness testified that the fiber samples were "microscopically identical." However, she also stated that since they were fibers commonly found in many places, she could not say that the ones found on Jones' clothing came from the victim's apartment. The expert's testimony explained the meaning of the terms used and the foundation upon which her opinion was premised. The motion to strike the testimony was properly denied. *State v. Golladay,* 78 Wn.2d 121, 470 P.2d 191 (1970).

Reversed and remanded.

FARRIS, C.J., and RINGOLD, J., concur.

Reconsideration denied June 29, 1978.