[No. 7628–1–I.   Division One.   May 27, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. MELVIN
EARL JONES, *Appellant.*

552

*Jack Steinberg* and *Steinberg & Steinberg,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Gregory P. Canova, Deputy,* for respondent.

JAMES, J.—Defendant Melvin Earl Jones appeals from a jury verdict finding him guilty of first–degree murder. This appeal alleges numerous errors in the retrial held following our reversal of Jones' original conviction. *State v. Jones,* 19 Wn. App. 850, 578 P.2d 71 (1978). We affirm.

The victim in this case died as a result of strangulation that occurred during or shortly after a forcible sexual assault. The only substantive jury question was identification. At trial Jones attempted to establish an alibi for the evening of the murder. Secondarily, he sought to demonstrate that investigating officers engaged in a conspiracy to secure his conviction by suppressing evidence, and by failing to investigate other suspects in the case.

On appeal, Jones first contends that the trial judge erred in admitting evidence that his palm print was found at the murder scene. He argues that the relevance of the print was not established because the State could not prove when it was made.

The relevance and admissibility of evidence are

within the trial judge's discretion. *State v. Schimmel-pfennig,* 92 Wn.2d 95, 594 P.2d 442 (1979). A trial judge's determination to admit evidence will be overturned only if "no reasonable person would take the view adopted by the trial court." *State v. Huelett,* 92 Wn.2d 967, 969, 603 P.2d 1258 (1979). Here, the fact that Jones' palm print was found at the scene of the murder was both relevant and admissible to establish his identity as the killer. Although Jones testified that the print was made 3 weeks prior to the date of death, the jury could disbelieve him. We find no abuse of discretion.

Jones next contends that the trial judge should have dismissed the information because the prosecution suppressed evidence favorable to him. This contention is based neither on the allegation that the prosecution withheld evidence nor on the actual destruction of any evidence. *Cf. United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976) (nondisclosure of evidence); *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976) (destruction of potentially exculpatory evidence). Rather, his claim of "suppression" rests on the State's failure to conduct an adequate investigation. He specifically points to two aspects of the police investigation. First, he maintains the police failed to adequately investigate an identified suspect. Second, he points out that the State failed to identify a number of latent fingerprints found in the victim's apartment which did not match either the victim's or his own prints. He argues that these inadequacies of the police investigation deprived him of a fair trial. We do not agree.

Due process is denied an accused if the prosecution withholds material exculpatory evidence. *United States v. Agurs, supra; Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). In Washington, this rationale has been extended and a due process violation found in cases involving the destruction of evidence prior to trial. *State v. Wright, supra; State v. Scriver,* 20 Wn. App. 388, 580 P.2d 265 (1978). In both these situations, a defendant must

make a threshold showing that the prosecution denied him access to evidence prior to trial. In *Brady,* the prosecutorial misconduct was the failure to grant meaningful discovery. In *Wright,* the misconduct was the destruction of evidence. In this case, Jones had complete access, through discovery, to all the State's evidence. Nothing in the record shows that any evidence was destroyed. There was no constitutionally impermissible "suppression" of evidence under either *Brady* or *Wright.*

Notwithstanding the fact there was no suppression of evidence in the traditional sense, Jones argues that a constitutional violation occurred because the police failed to conduct an adequate investigation. Neither *Brady* nor *Wright,* however, impose a duty on the State to expand the scope of a criminal investigation. As the court recently stated:

> The State "is required to preserve all potentially material and favorable evidence." *State v. Canaday,* 90 Wn.2d 808, 815, 585 P.2d 1185 (1978). This rule, however, has not been interpreted to require police or other investigators to search for exculpatory evidence, conduct tests, or exhaustively pursue every angle on a case. *See State v. Turrubiates,* 25 Ariz. App. 234, 542 P.2d 427 (1975). The police are required only to preserve that which comes into their possession either as a tangible object or a sense impression, if it is reasonably apparent the object or sense impression potentially constitute material evidence.

*State v. Hall,* 22 Wn. App. 862, 866–67, 593 P.2d 554 (1979). *See also Commonwealth v. Campbell,* \_\_ Mass. \_\_, 393 N.E.2d 820 (1979). *But see* Note, *Toward a Constitutional Right to an Adequate Police Investigation: A Step Beyond Brady,* 53 N.Y.U. L. Rev. 835 (1978).

Finally, we conclude the prosecutor's actions did not deny Jones a fair trial. In Washington, a prosecutor is not only an advocate, but also "a quasi–judicial officer of the court, charged with the duty of insuring that an accused receives a fair trial." *State v. Torres,* 16 Wn. App. 254, 256, 554 P.2d 1069 (1976). *See also ABA Standards Relating to*

*the Prosecution Function and the Defense Function*
Standard 3.11(c) (Approved Draft, 1971). In this case, Jones argues that the prosecutor's ethical duty required him to identify the unknown latent prints found in the victim's apartment. Expert testimony at trial, however, established that, normally, single latent fingerprints may be identified only through comparison with the prints of a known individual. Although the expert witness indicated that in exceptional circumstances the F.B.I. would attempt to identify a single fingerprint, he testified that this case presented no such exceptional circumstances. Jones never requested a court order requiring the State to compare the unknown latent fingerprints with any other identified suspect. The jury was aware of the latent fingerprints and that the prints had not been identified. We find no impermissible State conduct. *See Bell v. State,* 582 S.W.2d 800 (Tex. Crim. App. 1979).

■ Jones further contends the trial judge erred in refusing to admit evidence concerning another suspect. Once a proper foundation has been laid, a defendant may introduce evidence that another person committed the crime charged. *State v. Kwan,* 174 Wash. 528, 25 P.2d 104 (1933); *State v. Downs,* 168 Wash. 664, 13 P.2d 1 (1932). In *Downs* at page 667, the court stated:

> Before such testimony can be received, there must be such proof of connection with the crime, such a train of facts or circumstances as tend clearly to point out someone besides the accused as the guilty party.

*See also State v. Hawkins,* 260 N.W.2d 150 (Minn. 1977). The only connection shown between the other suspect and the murder was a hearsay statement from the victim's estranged husband, expressing his belief concerning the identity of the guilty party. This offer of proof does not satisfy the *Downs* test. Based on the lack of foundation, the trial judge properly excluded the proffered evidence.

■ Jones next attacks the trial judge's failure to admit evidence of the victim's bad character. As we stated in the prior opinion in this case:

Jones argues that 40 letters found in the victim's apartment which evidence her acquaintance with criminals should have been admitted to rebut the State's evidence of the victim's good character. The State's evidence cited by Jones was testimony by her mother that she was an "immaculate" housekeeper. The significance of the testimony was that a greasy palm print on the wall of the victim's apartment was identified by the police as belonging to Jones. Jones testified that he had been in the victim's apartment only one time—3 weeks before the homicide. We find no error in excluding the evidence. The character of the victim was not at issue.

(Citation omitted.) *State v. Jones,* 19 Wn. App. 850, 854, 578 P.2d 71 (1978). No testimony at the retrial placed the victim's character at issue.

■ Jones further contends that the trial judge erred in failing to grant his motion for a mistrial. Jones originally was charged with two counts of first-degree murder. His first trial resulted in a verdict of not guilty for the second homicide. The trial judge, therefore, ordered that no mention of the second homicide be made during the retrial. On direct examination, however, one of the State's witnesses inadvertently made reference to the fact that Jones had been under investigation for "another homicide." Defense counsel immediately moved for a mistrial and the trial judge denied the motion.

As a general rule, the trial courts have wide discretionary powers in conducting a trial and dealing with irregularities which arise. . . . A mistrial should be granted only when "nothing the trial court could have said or done would have remedied the harm done to the defendant." . . . In other words, a mistrial should be granted only when the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly. . . . Only those errors which may have affected the outcome of the trial are prejudicial.

(Citations omitted.) *State v. Gilcrist,* 91 Wn.2d 603, 612, 590 P.2d 809 (1979). We conclude that the inadvertent reference to the other homicide investigation did not affect the

outcome of the trial. *See State v. Nettleton,* 65 Wn.2d 878, 400 P.2d 301 (1965); *State v. Lewis,* 19 Wn. App. 35, 573 P.2d 1347 (1978). The trial judge did not abuse his discretion.

We have examined Jones' remaining contentions and find them to be without merit.

Affirmed.

ANDERSEN and DORE, JJ., concur.

Reconsideration denied June 4, 1980.

Review denied by Supreme Court September 5, 1980.