**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84083-5-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| JUSTIN GOGO, | |
| Appellant. | |

FELDMAN, J. — A jury convicted Justin Gogo of three counts of child rape. Gogo raises several challenges on appeal regarding the denial of his motion for a mistrial, the denial of his motion to excuse a juror for cause, prosecutorial misconduct, double jeopardy, and the terms of his judgment and sentence. We agree with Gogo that the trial court abused its discretion in denying his motion for a mistrial after a witness testified, in violation of a pretrial order excluding and suppressing any statement or disclosure that Gogo had sexually assaulted the victim's sister, that Gogo "had been fooling around with those kids." We therefore reverse the trial court's ruling denying his motion for a mistrial and remand the matter for a new trial without reaching Gogo's other assignments of error.

I

Shannon Smith (Shannon) is the mother of two children, J.H. (born in 2006) and T.H. (born in 2005). Shannon started dating Gogo in June 2010. Six

months later, Shannon and her two children moved into an apartment complex across the street from her stepfather, Rollie Miller. Gogo lived with Shannon and her children on and off during their relationship, and he often watched and cared for the children when Shannon was at work or school. After Shannon and Gogo separated in 2013, Shannon and her children moved in with her mother, Penny Smith (Penny).[1]

On March 12, 2015, J.H. told Shannon at Penny's house that Gogo had "touched" J.H. with "[h]is mouth." Shannon informed Penny of J.H.'s disclosure. On March 13, 2015, Shannon told Miller what J.H. said about Gogo. Miller called the police, and the responding officer instructed Shannon to fill out a statement form. Shannon and Miller then informally questioned J.H. about the event.

Two weeks later, J.H. sat for a formal child forensic interview. J.H. told the interviewer that when J.H. was five years old, Gogo told J.H. to come into the bedroom and get on the bed. J.H. said that they then removed their pants and engaged in oral sex with each other at Gogo's direction, which J.H. described and demonstrated, and that Gogo told J.H. not to tell anyone. J.H. also told the interviewer that "the same thing" happened on as many as five separate occasions, including once when T.H. was also in the room. The State then charged Gogo with three counts of first degree child rape against J.H. and a fourth count of first degree child molestation against T.H.

Prior to trial, the count involving T.H. was severed from the counts against J.H. The trial court also granted Gogo's pretrial motion to exclude and suppress

---

[1] Because this matter involves both Shannon and Penny Smith, we refer to them by their first names to avoid confusion.

No. 84083-5-I/3

any statement or disclosure that Gogo had sexually assaulted T.H.[2] The trial

ended in a mistrial after the jury deadlocked. The trial court's pretrial rulings were

then applied in a second trial. Similar to the first trial, the State's evidence

consisted primarily of testimony from J.H., Shannon, Miller, and Penny. The

State also played for the jury the video of J.H.'s forensic interview and elicited

expert testimony from another child forensic interviewer. Gogo testified and

denied the allegations. Gogo also presented expert testimony from a

psychologist regarding the formation and reliability of children's memories.

A key difference between the two trials is that in the second trial, unlike

the first, Penny improperly referred to Gogo's alleged sexual abuse of T.H.

During Penny's testimony on the fifth day of trial, she initially had difficulty

hearing the prosecutor's questions and seemed confused when attempting to

answer those questions. To remedy this difficulty, Penny was given an assistive

listening device. Shortly thereafter, the prosecutor questioned Penny about the

night she first learned of J.H.'s initial disclosure of alleged sexual abuse by Gogo:

> Q:     At some point that evening did Shannon come into your room?
>
> A:     Yes.
>
> Q:     And what happened?
>
> A:     She was very upset.
>
> Q:     Did she tell you anything?
>
> A:     She said that [J.H.] had disclosed something that was going
>        on with Shannon's boyfriend.

---

[2] More precisely, the trial court granted Gogo's pretrial motions "to exclude disclosure by the alleged victim, T.H., to her mother, her sister ([J.H.]) and a child interview specialist" and "to suppress statements of [J.H.] and all other witnesses expressing any opinion that Mr. Gogo has sexually assaulted his son and others."

No. 84083-5-I/4

. . . .

Q:      Do you remember exactly what Shannon told you?

A:      *That he had been fooling around with those kids* and that she was just discombobulated.

(Emphasis added.) The italicized reference to "those kids," as noted previously, was a clear violation of the trial court's pretrial order excluding and suppressing any statement or disclosure that Gogo had sexually assaulted T.H.

Unfortunately, defense counsel did not immediately object to this improper testimony, and the prosecutor continued asking questions of Penny. Then, after five additional questions, defense counsel objected to <u>both</u> Penny's answer to the fifth question <u>and</u> Penny's earlier reference to Gogo "fooling around with those kids" as follows: "Objection, speculation and hearsay. I also have an objection that should be made outside the presence of the jury." The court sustained the objection to the later answer and asked defense counsel "does that address your concerns," to which defense counsel responded, "It addresses one of them. There is still another motion I need to be heard on outside the presence of the jury." Rather than allow defense counsel to be heard outside the presence of the jury, the court instead allowed the State to finish its direct examination of Penny and then asked defense counsel if she intended to conduct cross examination, to which defense counsel replied, "I may, but I first have a motion." Without explanation, the court then told Penny that her "testimony is done" and asked the State to call its next witness, T.H., without hearing defense counsel's motion. After T.H.'s testimony, the court excused the jury for lunch.

Once the jury was excused, defense counsel moved for a mistrial and

4

No. 84083-5-I/5

explained that Penny's testimony that Gogo "had been fooling around with those kids" violated the trial court's pretrial order excluding and suppressing any statement or disclosure that Gogo had sexually assaulted T.H. The trial court heard argument on Gogo's motion after the lunch break. The court did not rule promptly. Instead, it took the matter under advisement until the end of evidence presentation the following day, when it told the parties it would deny the motion—which it did the following morning.

In denying Gogo's mistrial motion, the trial court recognized that Penny's testimony "was a critical and serious irregularity in violation of the pretrial ruling," but concluded that it could be cured. Believing that a specific instruction to disregard the improper testimony would instead emphasize it, the court initially told the parties it would strike Penny's testimony entirely and have her retestify from the beginning subject to cross examination. The prosecutor and defense counsel disagreed with the trial court's proposed cure; both expressed concern that Penny would not be able to abide by the court's rulings if recalled as a witness. To avoid recalling Penny as a witness, the parties reached an agreement to stipulate to the facts that would have been elicited by Penny's testimony, which they presented to the trial court as the "least dangerous path."

The trial court accepted the parties' proposed cure. As a result, at the conclusion of the State's case in chief—two days after Penny's improper testimony that Gogo "had been fooling around with those kids"—the trial court instructed the jury as follows:

> The testimony of the grandmother, Penny Smith, will be stricken
> from the record because in part it was appreciably and unfairly
> defective and hindered by her inability to clearly hear the

5

No. 84083-5-I/6

> Prosecutor's questions. In its place a stipulation or agreement
> between the parties shall be entered regarding the testimony of
> Penny Smith. I'm going to read you that stipulation that will replace
> [the] testimony of Penny Smith.

The court then read to the jury the parties' stipulation of the facts that "would have been elicited from Penny," which omitted Penny's earlier reference to Gogo "fooling around with those kids."[3]

This time, the jury convicted Gogo on all counts. Gogo timely appeals.

II

The singular issue presented here is whether Penny's testimony that Gogo "had been fooling around with those kids," when viewed against the backdrop of all the evidence, so prejudiced the jury that Gogo was denied his right to a fair trial. *See State v. Weber*, 99 Wn.2d 158, 164-65, 659 P.2d 1102 (1983). We review a trial court's decision to grant or deny a mistrial for abuse of discretion. *State v. Young*, 129 Wn. App. 468, 473, 119 P.3d 870 (2005). A court abuses its discretion in denying a motion for mistrial where "there is a 'substantial likelihood' the prejudice affected the jury's verdict." *Id.* at 472-73 (quoting *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000)). In determining whether a trial irregularity may have influenced the jury, we consider the three *Weber* factors, namely "(1) the seriousness of the irregularity, (2) whether the statement in question was cumulative of other evidence properly admitted, and (3) whether the irregularity could be cured by an instruction to disregard the remark, an

---

[3] While the trial court did not expressly instruct the jury to "disregard" the improper testimony, and instead indicated that the testimony "will be stricken," it instructed the jury before trial, "You will disregard any evidence either not admitted or which is ordered stricken by me," and its final instructions to the jury likewise stated, "If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict."

6

instruction which a jury is presumed to follow." *State v. Escalona*, 49 Wn. App. 251, 254-55, 742 P.2d 190 (1987) (citing *Weber*, 99 Wn.2d at 165-66).

The State largely concedes the first two *Weber* factors, and for good reason. Penny's improper testimony was a serious irregularity because it indicated that Gogo had also sexually abused T.H. under similar circumstances. *See State v. Babcock*, 145 Wn. App. 157, 163-64, 185 P.3d 1213 (2008) ("serious irregularity" for jury to hear testimony in child rape trial that defendant had also molested the victim's sibling); *see also Escalona*, 49 Wn. App. at 255 ("extremely serious" irregularity for jury to hear testimony in trial for assault with a deadly weapon that the defendant "already has a record and had stabbed someone").[4] The trial court, too, acknowledged that Penny's testimony was a "serious irregularity in violation of the pretrial ruling." Furthermore, Penny's improper testimony "becomes particularly serious" given the paucity of evidence that would corroborate J.H.'s testimony, such as physical evidence, other eyewitness testimony of the alleged criminal acts, or a confession. *Escalona*, 49 Wn. App. at 255.[5] The improper testimony also was not cumulative of other evidence properly admitted because the trial court's pretrial ruling prevented the jury from hearing other evidence of T.H.'s disclosure regarding Gogo. Accordingly, the first two *Weber* factors support Gogo's argument that the trial

---

[4] The closest the State comes to disputing the serious nature of Penny's improper testimony is its argument that Penny did not explicitly refer to T.H. But in the context of Penny's entire testimony, in which she repeatedly referred to J.H. and T.H. as "the kids," and Shannon's earlier testimony about Gogo performing oral sex on J.H., it is clear that "fooling around with those kids" meant Gogo sexually abusing T.H. in addition to J.H.

[5] *See also State v. Gower*, 179 Wn.2d 851, 858, 321 P.3d 1178 (2014) ("highly prejudicial evidence of prior sex offenses . . . impermissibly bolstered the alleged victim's credibility" where credibility was the "main issue in this case").

7

No. 84083-5-I/8

court abused its discretion in denying his motion for mistrial.

The more difficult question here is whether the trial court's instruction to the jury that Penny's testimony "will be stricken from the record" cured the prejudice from the improper testimony. While we presume that juries follow a trial court's instructions, we also acknowledge that "[s]ome curative instructions are insufficient in removing the prejudicial effect of evidence." *State v. Christian*, 18 Wn. App. 2d 185, 199, 489 P.3d 657 (2021). "'[I]n certain situations curative instructions cannot remove the prejudicial effect of evidence of other crimes.'" *State v. Garcia*, 177 Wn. App. 769, 783-84, 313 P.3d 422 (2013) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)). Washington courts often refer to this sort of incurable testimony as an "evidentiary harpoon," because an instruction to the jury to disregard the improper testimony only serves to emphasize it and thereby increase its prejudicial effect. *See Babcock*, 145 Wn. App. at 165-66 (citing *State v. Suleski*, 67 Wn.2d 45, 51, 406 P.2d 613 (1965)). Conversely, "for less serious irregularities a proper instruction may provide an effective cure." *Garcia*, 177 Wn. App. at 784.

Because of the timing and nature of the trial court's attempted cure in this case, we do not have a firm conviction that the curative instruction sufficiently eliminated the prejudice from the improper testimony. With regard to the timing of the attempted cure, our Supreme Court has recognized that the "potential for prejudice is exacerbated" where a jury is "allowed to go home and consider" improper testimony overnight without first being instructed to disregard it. *State v. Davenport*, 100 Wn.2d 757, 764, 675 P.2d 1213 (1984). The trial court here did not immediately sustain a contemporaneous objection, strike the improper

8

testimony, and instruct the jury to disregard it. Instead, the court waited over two days—during which time four witnesses testified, including both the alleged victim of the charged offenses and the alleged victim of Gogo's other sexually abusive conduct—to finally instruct the jury that Penny's testimony would be stricken. It is reasonable to assume that during this multi-day delay, the improper testimony would have made such an indelible impression on the jury that no instruction to disregard it could mitigate its prejudicial effect.

Turning to the nature of the attempted cure, an instruction is not curative where it "fail[s] to inform the jury that the . . . comment was improper and not to be considered." *Id.*; *see also Young*, 129 Wn. App. at 477 ("an instruction that fails to expressly direct the jury to disregard evidence, particularly where . . . the instruction does not directly address the specific evidence at issue, cannot logically be said to remove the prejudicial impression created by revelation of identical other acts"). The trial court here never told the jury that Penny's testimony that Gogo "had been fooling around with those kids" was improper and therefore inadmissible. Instead, it told the jury that Penny's testimony was "hindered by her inability to clearly hear the Prosecutor's questions." While the trial transcript shows that Penny initially had difficulty hearing the prosecutor's questions, it clearly shows that she was able to hear, understand, and correctly respond to every question asked of her once she began using the assistive listening device. That is equally true with regard to the central question and answer at issue here:

Q:     Do you remember exactly what Shannon told you?

A:     That he had been fooling around with those kids and that she

9

No. 84083-5-I/10

was just discombobulated.

Although trial courts have "wide discretion to cure trial irregularities," *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172 (1992), we cannot sanction an instruction to disregard evidence based on a reason that an objective observer would know is false—particularly where, as here, the instruction is delayed and the improper testimony is highly prejudicial.

Indeed, Washington courts have long recognized that the potential prejudice from admitting evidence of prior bad acts is "at its highest" in cases alleging sex crimes. *State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982). As the court explained in *Saltarelli*, "Once the accused has been characterized as a person of abnormal bent, driven by biological inclination, it seems relatively easy to arrive at the conclusion that he must be guilty, he could not help but be otherwise." *Id.* (quoting Slough and Knightly, Other Vices, Other Crimes, 41 Iowa L. Rev. 325, 333-34 (1956)). Once the jury heard that Gogo had also engaged in the same type of sexual abuse against T.H., it would have been "extremely difficult" for the jury to "ignore this seemingly relevant fact" and not use it for "its most improper purpose," namely to conclude that Gogo acted towards J.H. in conformity with the sexually abusive character he demonstrated towards T.H. *See Escalona*, 49 Wn. App. at 256.

In an attempt to sidestep the above analysis, the State argues that defense counsel contributed to the delay in attempting to cure the prejudice from the improper testimony by rejecting the trial court's proposed cure and agreeing to read the stipulated testimony towards the end of trial. While we agree that defense counsel could have—and should have—raised their objection and

10

mistrial motion earlier and more forcefully, the record shows that the delay in instructing the jury that the improper testimony would be stricken was caused by the trial court's decision to wait two days to formally deny Gogo's motion and discuss curative options with the parties. Additionally, as in *Young*, defense counsel "moved for a mistrial as soon as the jury was excused," which also was delayed by the trial court's mishandling of defense counsel's protestations. 129 Wn. App. at 475-76. And rather than promptly sustain any one of defense counsel's repeated objections to Penny's improper testimony, the trial court inexplicably told Penny that her "testimony is done" and excused her without allowing Gogo to cross examine her. For these reasons, we reject the State's assertion that defense counsel is responsible for the trial court's delay in seeking to cure the improper testimony.

Lastly, the State analogizes the trial court's curative efforts to those in *State v. Gamble*, 168 Wn.2d 161, 225 P.3d 973 (2010), where a witness testified in a murder trial that the defendant had a "booking file" and that an accomplice sat on the defendant's lap at the police station. *Id.* at 176. *Gamble* is easily distinguished because unlike the jury in that trial, which was immediately instructed to disregard the improper testimony, the jury in Gogo's trial was left to consider Penny's improper testimony for multiple days before finally being told to disregard it based on a reason that an objective observer would know is false. Further, Gogo's case is lacking the corroborative evidence of guilt that was present in *Gamble*, where the State countered the defendant's self-defense claim using multiple eyewitnesses, ballistics analysis, the defendant's bloody clothes found alongside the murder weapon, and the defendant's own incriminating

11

statements. *Id.* at 179-80. Here, Penny's improper testimony impermissibly bolstered J.H.'s credibility in a close case that hinged on witness credibility. *See Gower*, 179 Wn.2d at 858. Thus, *Gamble* does not require affirmance here.[6]

Additionally, a major difference between Gogo's second trial, which resulted in a conviction, and his first trial, which ended in a deadlocked jury, was Penny's improper testimony that Gogo "had been fooling around with those kids." Under established precedent, "[t]his is persuasive evidence that the introduction of the [improper testimony] may have impacted the outcome." *In re Det. of Post*, 170 Wn.2d 302, 315, 241 P.3d 1234 (2010). For this reason too, we do not have a firm conviction that the curative instruction eliminated the prejudice from the improper testimony. Given the similarity of the prior bad acts (sexual abuse of T.H.) and the charges against Gogo (sexual abuse of J.H.), the trial court's curative instruction needed to be both immediate and forthright. It was neither. Consequently, there is a substantial likelihood that the prejudice from Penny's improper testimony affected the jury's verdict and, thus, denied Gogo a fair trial. The trial court therefore abused its discretion in denying Gogo's motion for a mistrial.

---

[6] The State's reliance on *State v. Jones*, 26 Wn. App. 551, 614 P.2d 190 (1980), is similarly misplaced. The court there affirmed the denial of a mistrial motion where a witness testified during a murder trial that the defendant was under investigation for "another homicide." *Id.* at 556. *Jones* is inapposite because it is unclear whether and to what extent the trial court in that case instructed the jury to disregard the statement. Moreover, the State in *Jones* presented other corroborative evidence of guilt, such as the defendant's palm print found at the murder scene, which is absent in Gogo's case. *Id.* at 552.

No. 84083-5-I/13

III

In sum, we reverse the trial court's ruling denying Gogo's motion for a mistrial and remand for a new trial without reaching Gogo's other assignments of error.

_Feldman, J._

WE CONCUR:

_Smith, C.J._        _Dwyer, J._